IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-02130-RBJ

ERICA MONSON,

    Plaintiff,

v.

COUNTRY PREFERRED INSURANCE COMPANY,

    Defendant.

---

ORDER on MOTION TO DISMISS

---

This matter is before the Court on Defendant Country Preferred Insurance Company (Country)'s Motion to Dismiss Plaintiff's Second Amended Class Action Complaint. ECF Nos. 33, 47. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### Statement of Facts

Plaintiff Erica Monson brings this action on behalf of herself and all persons similarly situated, said to be individuals in Colorado who were involved in a total loss accident, had a Country automobile insurance policy providing for total loss coverage, and to whom Country did not pay certain fees. Second Amended Complaint, ECF No. 26 ¶15. Plaintiff alleges that she obtained automobile insurance from Country for the 2016 calendar year for a Toyota Camry LE. ECF No. 26 ¶4. This policy provided for coverage in the event of a total loss of that vehicle. *Id.* ¶9. On January 14, 2016 Ms. Monson incurred $71.17 in ownership taxes and registration and

title fees for her covered Camry. *Id.* ¶10. Plaintiff's insured Camry sustained a total loss collision on June 4, 2016. Shortly thereafter, she incurred $305.18 in ownership taxes and registration and title fees related to a replacement vehicle. *Id.* ¶11. She was also credited $4.78 by the Department of Motor Vehicles ("DMV") for the registration fees she incurred when registering the replacement vehicle. *Id.* She submitted a claim to Country based on her insurance policy, and Country determined that the Camry was a total loss from the accident. *Id.* ¶11-12.

In a document dated June 15, 2016 Country provided Ms. Monson with an "Automobile Statement of Settlement," describing the benefits it would pay her for the total loss. *Id.* ¶ 12. Country did not agree to pay Ms. Monson the pro-rata amount of ownership taxes and title and registration fees associated with the total loss of the Camry. ECF No. 26, Exhibit 1. Country also did not agree to pay the total amount of these fees incurred related to the replacement vehicle minus the credit from the DMV. *Id.* This document did list $9.50 for "applicable title and license transfer fees," and Country paid only this amount in relation to ownership tax, title fees and registration fees. ECF No. 26 ¶12.

Procedural Background

Plaintiff filed her Complaint against Country and Doe Defendants on September 5, 2017. ECF No. 1. She later filed a First Amended Class Action Complaint on December 18, 2017 and a Second Amended Class Action Complaint on January 23, 2018, which is now the operative complaint in the case. ECF No. 26. Plaintiff asserts three claims on behalf of herself and purported class: (1) violation of Colo. Rev. Stat. § 10-3-1115, *et seq.*; (2) violation of Colo. Rev. Stat. § 6-1-105, *et seq.*; and (3) bad faith breach of insurance contract.

On February 22, 2018 Country filed a Motion to Dismiss all three of plaintiff's claims. ECF No. 33. Since that time a response, reply, notice of two rulings by other judges in this district in similar cases, a supplement to defendant's motion and a response to the supplement have been filed. The motion is now ripe for review and decision.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

Plaintiff's second claim for deceptive trade practices under the Colorado Consumer Protection Act is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). While for the first and third claim, plaintiff need only state a claim that is plausible on its face, for the second claim alleging fraud, plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In other words, Rule 9(b) requires that a plaintiff set forth the "who, what, when, where and how" of the

alleged fraud. *U.S. ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 232 F.3d 902, 2000 WL 1595976, at *3 (10th Cir. 2000). This is true in the District of Colorado regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010).

### III.  ANALYSIS

Plaintiff alleges that Country has a practice of unlawfully failing to pay its insureds certain statutorily mandated fees in the event of a total loss of one of their insured's vehicles. She claims that this (1) violates Colorado statutory prohibitions of unreasonable denial/ delay of payments by an insurer; (2) violates Colorado statutory prohibitions of deceptive trade practices; and (3) is a bad faith breach of insurance contract. I will address each claim in turn.

**A. Claim 1: Unreasonable Delay/Denial of Payment for Benefits Owed by Insurer.**

Plaintiff alleges that Country's failure to make payments for ownership tax, registration fees, and title fees upon the total loss of her vehicle violates Colo. Rev. Stat. §10-3-1115, *et seq.*, which prohibits unreasonably delay or denial of payment of a claim for benefits owed to or on behalf of any first-party claimant. The alleged covered benefit is provided by Colo. Rev. Stat. §10-4-639 which states that "[a]n insurer shall pay title fees, sales tax, and any other transfer or registration fee associated with the total loss of a motor vehicle." Ms. Monson seeks the pro-rata amount of ownership tax and title and registration fees associated with the totaled vehicle.[1] ECF No. 26 ¶30. In the alternative she seeks the total amount of ownership tax and title and registration fees associated with the replacement vehicle, minus a credit from the DMV, if any. *Id.*

---

[1] Plaintiff explains that "pro-rata" would mean fees for the remaining period of the registration year after an event resulting in a totaled vehicle.

Country has three major problems with plaintiff's claim that she is owed fees under the statute. First, the statute does not entitle plaintiff to any annual title or registration fees associated with the original vehicle or the replacement vehicle. Defendant argues that even if plaintiff were entitled to such fees, she never tendered a claim for payment to Country for any covered benefit that was unreasonably delayed or denied. ECF No. 33 at 3. Second, unlike the plaintiffs in two other cases in this district, which I will discuss below, Ms. Monson received a credit from the DMV, which relieves Defendants of obligations under Colo. Rev. Stat. § 10-4-639 (1). *Id.* at 5. Third, even if Ms. Monson is entitled registration and title fees, "ownership taxes" are not among the statutory obligations as a matter of law. *Id.* at 6. I agree only with the third argument.

1) <u>Plaintiff's Entitlement to Annual Title and Registration Fees Associated with a Total Loss.</u>

Country argues that Colo. Rev. Stat. §10-4-639(1), which obligates the insurer to pay fees "associated with the total loss of a motor vehicle," does not require an insurer to pay fees associated with the original vehicle or replacement vehicle. ECF No. 33 at 3. As fees associated with the original vehicle or a replacement vehicle are the only types of fees that could potentially be associated with a total loss, defendant's interpretation would leave the statute empty of any meaning. Plaintiff asks for either the pro-rata amount of fees related to the lost vehicle or the total amount of fees related to the replacement vehicle, minus a DMV credit, which plaintiff alleges was only a small fraction of the fees incurred. ECF No. 33 at 7. Either theory of recovery is plausible under the statute.

Pursuant to Colo. Rev. Stat. § 10-3-1116(1), a first-party claimant can recover "reasonable attorney fees and court costs and two times the covered benefit" if the "claim for payment of benefits has been unreasonably delayed or denied." This is further explained at Colo. Rev. Stat.

5

§ 10-3-1115(2): "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for the action." Country argues that Plaintiff failed to allege that she ever tendered a claim for payment to Country for any covered benefit that was unreasonably delayed or denied. However, I find that in alleging that she submitted a claim with Country for the totaled Camry, she implicitly is alleging that she tendered a claim for whatever benefit she was entitled to under the policy and the applicable law, i.e., "payment of a covered benefit." *See* Colo. Rev. Stat. §10-3-1115(2). She states that she incurred $71.17 in ownership taxes and registration and title fees related to the Camry that was insured by Country.   ECF No. 26 ¶9-10.  After the loss, Ms. Monson incurred $305.18 in ownership taxes and registration and title fees related to the replacement vehicle.  ECF No. 26 ¶11.  The Department of Motor Vehicles credited Ms. Monson $4.78 for registration fees incurred when registering a replacement vehicle.  *Id.*  In resolving her claim, Country paid Ms. Monson $9.50 for "applicable title and license transfer fees."  ECF No. 26 ¶12.

She further alleges that Country has not paid her the pro-rata amount of fees incurred for the Camry nor has it agreed to pay the total amount of those fees for the replacement vehicle. ECF No. 26 at 13.  Whether Country's settlement of the claim, if inadequate, was unreasonable is a question for the fact finder.  *Vacarro v. American Family Insurance Group,* 275 P. 3d 750, 759 (Colo. App. 2012) ("What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury.").  I find that these allegations plausibly state a claim for violation of Colo. Rev. Stat. § 10-3-1115, et seq.

   2) <u>DMV Credit.</u>

As mentioned earlier, two other judges in this district have recently rendered decisions on motions to dismiss statewide class actions against automobile insurers, raising parallel claims of

alleged underpayment on total loss vehicle claims. *See generally* ECF No. 47. These cases are *Pearson v. Geico Casualty Co.*, No. 17-cv-02116-CMA-MEH and *Carter v. Amica Mutual Insurance Co.*, No. 17-cv-02156-RM-MEH. In those cases the courts granted in part, and denied in part, the defendants' motions to dismiss.

Defendant highlights that unlike the *Pearson* or *Carter* plaintiffs, Ms. Monson received a DMV credit. ECF No. 47 at 4. Country argues that the $4.87 in DMV credit Ms. Monson received shows she did not incur a registration fee associated with the total loss of her Camry, and also that Plaintiff did not tender a claim for an unidentified deficiency in the DMV's credit to CPIC. *Id.* I agree with the plaintiff that these factual distinctions from *Pearson* and *Carter* are distinctions without implication at this stage in litigation. Colo. Rev. Stat. § 42-3-115(1) does not indicate that the DMV has any obligation to pay registration fees for a total loss vehicle – the language in the statute indicates that the DMV credit is discretionary.

It states "[t]he owner, upon applying for registration in such owner's name during the same registration period of another motor vehicle, *may* receive credit upon the fees due for such new registration for such portion of the fees paid for the cancelled registration *as the department may determine to be proper and proportionate* to the unexpired part of the original term of registration." Colo. Rev. Stat. § 42-3-115(1) (emphasis added). On the other hand, Colo. Rev. Stat. §10-4-639(1) mandates the insurance provider to pay title fees, sales tax, and any other transfer or registration fee associated with a total loss. Though a DMV credit may be relevant in determining the amount of fees owed, a discretionary credit from the DMV does not relieve insurance providers of their statutory duties as a matter of law.

3) <u>Ownership Taxes.</u>

Country also argues that plaintiff is not entitled to payment of any "ownership taxes" under the statute. ECF No. 33 at 3. In *Pearson* and *Carter*, the district courts granted the motion to dismiss this claim to the extent each claim sought recovery of "ownership taxes" but denied the motions otherwise. ECF No. 47, Exhibits 1-4. Colo. Rev. Stat. §10-4-639(1) is arguably ambiguous as to whether it requires insurers to pay ownership taxes associated with a total loss vehicle. It provides that "[a]n insurer shall pay title fees, sales tax, and any other transfer or registration fee associated with the total loss of a motor vehicle." Colo. Rev. Stat. § 10-4-639(1). Plaintiff argues that ownership taxes are included in the statute as a form of "registration fee." Defendant argues that the statute does not entitle Plaintiff to payment of any ownership taxes as these are not specifically listed. Moreover, the Colorado legislature has used the terms "ownership tax" and "registration fee" separately in related statutes.

"When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, they must endeavor to predict how the high court would rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2016). Colorado courts have not addressed whether ownership tax is among the fees that an insurer must pay for a total vehicle loss under Colo. Rev. Stat. §10-4-639(1). Therefore, I must "endeavor to predict" how the Colorado Supreme Court would rule.

Colorado's law on statutory interpretation is one aimed at giving effect to the General Assembly's "purpose or intent in enacting the statute." *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001). This begins with first looking to the plain language of the statute, giving words their commonly accepted meanings, and applying the statute as written if the words are unambiguous. *People v. Garcia*, 113 P.3d 775, 780; *Martin*, 27 P.3d at 851. "The legislative choice of language may be concluded to be a deliberate one calculated to obtain the result dictated by the

plain meaning of the words." *Hendricks v. People*, 10 P.3d 1231, 1238 (Colo. 2000) (quoting *City & Cty. of Denver v. Gallegos*, 916 P.2d 509, 512 (Colo. 1996)). Colorado courts must "read the statute as a whole and give harmonious and sensible effect to all its parts, when possible." *People v. Martinez*, 70 P.3d 474, 477 (Colo. 2003). "In the event the statute is ambiguous, we consider the language the legislature chose to utilize, the evident legislative purposes, the consequences of alternative constructions, and the legislative history, if available." *Id*. (citing *Leonard v. McMorris*, 63 P.3d 323, 326 (Colo. 2003)). I agree with this district's analysis in both *Carter* and *Pearson* in concluding that Colo. Rev. Stat. § 10-4-639(1) does not require an insurer to pay ownership taxes in settlement for the total loss of a vehicle.

In his recommendations in both *Pearson* and *Carter*, Magistrate Judge Hegarty explained that there are a number of statutes in Colorado in which "registration fees" are delineated from "ownership taxes:" For example, Colo. Rev. Stat. § 42-3-105, titled "Application for registration – tax," provides that "(3) The owner of such vehicle of the owner's agent shall, upon filing the application for registration, pay such fees as are prescribed by sections 42-3-304 to 42-3-306, together with the annual specific ownership tax on the motor vehicle, trailer, semitrailer, or trailer coach for which the license is to be issued." Colo. Rev. Stat. § 42-3-304, titled "Registration fees – passenger and passenger-mile taxes --- clean screen fund – definitions," and Colo. Rev. Stat. § 42-3-306, titled "Registration fees – passenger and passenger-mile taxes – schedule – repeal," both identify many types of fees to be paid with registration or annual registration renewal of motor vehicles. These statutes do not identify an ownership tax as one of the fees to be paid with registration or annual registration. On the other hand, Section 42-3-106 and 42-3-107 define a "specific ownership tax." Section 106 requires an "owner of each item of classified property [to] pay an annual specific ownership tax unless exempted by this article" and

classifies automobiles as "Class A" personal property. Colo. Rev. Stat. § 42-3-106(1); (3). The legislature's use of the terms "registration fee" and "ownership tax" separately suggest that omission of ownership taxes from Colo. Rev. Stat. § 10-4-639(1) was intentional.

Within Colo. Rev. Stat. 10-4-639(1) the separate use of the words "tax" and "fee" support the conclusion that an ownership tax is not included in the term "registration fee." The insurer is required to pay "title fees, sales tax, and any other transfer or registration fee . . . ." As a rule of statutory interpretation, the inclusion of certain terms generally implies the exclusion of others. *See Elwell v. Oklahoma ex rel. Bd. Of Regents of Univ. of Oklahoma*, 693 F. 3d 1303, 1312 (10th Cir. 2012). Reading the statute as a whole reaffirms this interpretation. Part 1 is titled "Registration and Taxation," and Section 42-3-105(3) requires that vehicle owners seeking to register their vehicles "pay such fees as are prescribed by sections 42-3-304 to 42-3-306 [those titled Registration Fees], together with the annual specific ownership tax on the motor vehicle . . . for which the license is to be issued." Colo. Rev. Stat. § 42-3-105(3). Here, ownership taxes are identified as separate and apart from registration fees.

In conclusion, I find that Colo. Rev. Stat. § 10-4-639(1) does not require an insurer to pay "ownership taxes" in settlement for the total loss of a vehicle. I grant Country's motion to dismiss the first claim only to the extent it seeks recovery of "ownership taxes" but otherwise deny it for title fees and transfer or registration fees.

**B.  Claim 2: Deceptive Trade Practice.**

Plaintiff also alleges that Country violated the Colorado Consumer Protection Act ("CCPA"),[2] § 6-1-105 *et seq.* by failing to disclose material information about the automobile insurance policies it provides. Specifically, she alleges that Country violated the part of the

---

[2] Plaintiffs refer to the statute as the "Deceptive Trade Practices Act" in their pleadings. While the subsection to which Plaintiffs refer is titled "Deceptive trade practices," the proper title of the statute is "Colorado Consumer Protection Act." Colo. Rev. Stat. § 6-1-101.

statute which states: "(1) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . (u) [f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105(1)(u).

The Colorado Consumer Protection Act (CCPA) provides that an injured actual or potential consumer of defendant's goods or services can maintain a private civil action against a company engaged in the sale of services for violations of the Act's provisions. Colo. Rev. Stat. §6-1-113(2). It provides in relevant part:

> (2) Except in a class action or a case brought for a violation of section 6-1-709, any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable in an amount equal to the sum of:
>
> (a) The greater of:
>     (I) The amount of actual damages sustained; or
>     (II) Five hundred dollars; or
>     (III) Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct; plus
> (b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

Colo. Rev. Stat. § 6-1-113.

Country has a number of issues with plaintiff's second claim. It argues that the CCPA does not provide for any remedies in a class action lawsuit. Second, it argues that Plaintiff's claims for injunctive relief, whether individually or as a class, are not available under the CCPA. Third, it argues that plaintiff, in pursuing her individual damages, did not plead her claim with the particularity required by Fed. R. Civ. Pro. 9(b).

    1) <u>Availability of Actual Damages for Plaintiff Class under the CCPA.</u>

The CCPA sets forth the specific remedies available to private plaintiffs under the Act and also states that those remedies are available "except in a class action." Colo. Rev. Stat. § 6-1-113(2). Plaintiff argues that this exception language only prohibits the plaintiff class from receiving "the greater of" a number of remedies but does not preclude recovery of actual damages. ECF No. 35 at 14. However, a number of decisions from this district and from other courts in the Tenth Circuit have found that this language in the CCPA excepts the recovery of actual damages, triple damages, and attorney's fees in class actions.

In *Martinez v. Nash Finch Co.* the court held that although a plaintiff class is not expressly precluded from pursuing a private cause of action under the CCPA, § 6-1-113(2) exempts certain remedies from a plaintiff class. 886 F. Supp. 2d 1212, 1218 (D. Colo. 2012). In that case, the plaintiff pointed to a Colorado Court of Appeals decision, *Robinson v. Lynmar Racquet Club, Inc.* which found that actual damages may not be precluded in a class action. 851 P.2d 274, 278 (Colo. App. 1993). However, in *Robinson* the statute did not include language excepting actual damages. As Judge Krieger pointed out in *Martinez*, the *Robinson* court was interpreting an older version of the statute which read:

> (2) Except in a class action, ... [a defendant shall] be liable in an amount equal to the sum of:
> (a) Three times the amount of actual damages sustained or two hundred fifty dollars, whichever is greater; and
> (b) [costs and attorney's fees].

851 P.2d at 278; *see also* Historical and Statutory Notes to Colo. Rev. Stat. § 6–1–113, explaining the previous iterations of the statute. Referring to this language, the *Robinson* court held that statutory damages of $250 were unavailable to the plaintiff, as these were expressly excluded as a remedy from class actions. Applying the rationale in *Robinson*, language in the statute which now excludes actual damage must indicate that actual damages are also unavailable

to class members as a remedy. *See also Friedman v. Dollar Thrifty Auto. Grp. Inc.,* no. 12-cv-02432-WYD, 2015 WL 4036319, at *2-3 (D. Colo. July 1, 2015) ("a class action for damages under the CCPA is barred"); *In re Syngenta AG MR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1234-35 (D. Kan. 2015); *In re Santa Fe Natural Tobacco Co. Marketing & Sales Practices & Prods. Liability Litig.*, 288 F. Supp. 3d 1087, 1260 (D. N.M. 2017).

    2) <u>Availability of Injunction for Plaintiff Class under the CCPA</u>.

Plaintiff also makes a claim for injunctive relief, individually and on behalf of the class. At issue is whether the remedies listed for private causes of action in § 6-1-113(2) are exclusive, so that an injunction, as a remedy that is not listed, would be unavailable to the plaintiff class. Defendant argues that the two sections in the CCPA that address injunctive relief, Colo. Rev. Stat. §6-1-109(1)(a) and §6-1-110(1), only provide injunctive relief as remedies the Colorado Attorney General or the state District Attorneys may pursue in an enforcement action under the CCPA. As an injunction is not listed as a remedy for private causes of action, Defendant argues that an injunction is not available to the plaintiff class. ECF No. 33 at 11.

Plaintiff counters that the statutory purpose of the CCPA "to reach practices of the type that affect consumers generally and not to provide an additional remedy for purely private wrongs," and that *Andrews v. Picard*, Case No. 02-CV-0807, 2004 WL 6005360, at *7-8 (D. Colo. Mar. 3, 2004), supports the conclusion that the CCPA provides injunctive relief as a remedy in private actions. *Martinez,* one of the cases relied upon to conclude that § 6-1-113(2) excepts actual damages from a plaintiff class, also states that injunctive relief may arguably be available to a plaintiff class. *Martinez v. Nash Finch Co.*, No. 11-CV-02092-MSK-KLM, 2013 WL 1313899, at *3 (D. Colo. Mar. 29, 2013).

In *Pearson*, the plaintiffs did not concede that injunctive relief is not available under the CCPA, but they also did not oppose the defendant's motion to dismiss on the particular issue. As a result, the district court dismissed the claim without prejudice. ECF No. 47, Exhibit 2 at 19. On the other hand, in *Carter*, where the availability of injunctive relief was at issue, the district court concluded that considering the statute as a whole, the CCPA does not permit injunctive relief as a remedy for a private cause of action under CCPA. I agree. "When the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully." *Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist.*, 221 P.3d 399, 419 (Colo. 2009). Here, the Colorado legislature provided injunctive relief as a remedy that may be pursued by the Attorney General or District Attorney. Colo. Rev. Stat. § 6-1-109; 110. It did not provide injunctive relief among remedies for a private cause of action under the CCPA. § 6-1-113. Applying the Colorado rules of statutory construction previously described, I conclude that an injunction is not available to a private party or class of plaintiffs.

    3) <u>Fed. R. Civ. P. 9(b): Stating a Claim for Fraud with Particularity.</u>

Country also argues that plaintiff fails to plead her claim for a deceptive trade practice with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff's claim is one of fraudulent omission which applies to persons that "[f]ail[] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105(1)(u).

To state a plausible claim under the CCPA, a plaintiff must allege (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the

course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential customers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.  *See Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146-147 (Colo. 2003).  The plain language of C.R.S. § 6-1-105(1)(u) suggest that in proving a cause of action based on an omission, a plaintiff must establish four facts: (1) that the defendant failed to disclose information concerning goods or services to consumers; (2) defendant knew this information at the time of the advertisement or sale of the goods or services; (3) the non-disclosed information was material; (4) defendant did not disclose this information with the intent to induce the consumer into the transaction.  *Warner v. Ford Motor Co.*, No. 06-cv-02443-JLK-MEH, 2008 WL 4452338 at *7, 9 (D. Colo. September 30, 2008).

Under Rule 9(b), for claims premised on fraud, a plaintiff must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Koch v. Koch Indus.*, 203 F. 3d 1202, 1236 (10th Cir. 2000)).  However, it permits intent to be alleged generally.  To state its claim for fraud by omission Plaintiff alleges:

> 36. Plaintiff alleges COUNTRY violated the DTPA by, inter alia, failing to disclose material information about the automobile insurance policies it provided to Plaintiff and the Class Members under C.R.S. § 6-1-105(1)(u), i.e. by failing to disclose COUNTRY did not, as a uniform business practice, pay the pro-rata amount of ownership tax and title and registration fees related to the totaled vehicle or the total amount of ownership tax and title and registration fees related to the replacement vehicle, minus a credit from the DMV, if any.
>
> 37. As a result of COUNTRY's deceptive business practices, Plaintiff and the Class Members have suffered damage and lost money in that they paid for insurance services

15

> they otherwise would not have had the truth been disclosed, in an amount to be proven at trial. Plaintiff seeks an order enjoining COUNTRY from continuing to engage in the deceptive practices alleged herein.

ECF No. 26. At issue is whether the first element of a claim under the CCPA – that a defendant engaged in an unfair or deceptive trade practice – has been specifically pled.

Country argues that Plaintiff's CCPA claim fails because "[p]laintiff has failed to identify the information that should have been disclosed, the reason the information should have been disclosed, the identity of the person who should have disclosed it, and the approximate time or circumstances under which the information should have been disclosed." ECF No. 33 at 13. Plaintiff alleges that defendant failed to disclose that it did not pay fees associated with a loss of a totaled vehicle. ECF No. 26 ¶36. Taking reasonable inferences in favor of the plaintiff on a motion to dismiss, it is plausible that defendant knew of the statutory duties to pay fees associated with the total loss vehicle. Plaintiff also alleges that the non-disclosed information was material to her decision to purchase insurance from Country. ECF No. 26 ¶36.

However, Plaintiff does not allege the identity of the party who concealed Country's alleged practice of nonpayment of fees, or how this practice was concealed. Still, this suit is in its early stages. Discovery may lead to more specific allegations of fraud to push plaintiff over the Fed. R. Civ. P. 9(b) bar. As a result, I dismiss without prejudice Ms. Monson's individual claim for actual damages so that she can refile should discovery lead to more specific allegations. However, notwithstanding Fed. R. Civ. P 9(b), problems remain with remedies available for class actions under the CCPA and with injunctive relief. These cannot be remedied through further discovery. As a result, the motion to dismiss with prejudice the claim for actual damages for the plaintiff class and for injunctive relief individually and for the plaintiff class under the CCPA are granted.

### C. Bad Faith Breach of Insurance Contract.

To state a claim for a bad faith breach of insurance contract the plaintiff must allege: (1) the insurer acted unreasonably under the circumstances; (2) with knowledge or reckless disregard of the validity of the insured's claim; and (3) the plaintiff suffered damages as a result. *Curtis v. State Farm Mut. Auto Ins. Co.*, 621 F. Supp. 2d 1122, 1129 (D. Colo. 2008). While plaintiff's first statutory claim only requires a showing that denial of the claim was unreasonable, for the tort of bad faith breach of insurance contract, plaintiffs must also show that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable. *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9M, ¶21, 275 P.3d 750, 756, *as modified on denial of reh'g*. (Mar. 15, 2012). At this early stage in litigation, for the same reasons discussed in relation to Ms. Monson's first claim, I find that plaintiff plausibly states that she has been damaged by Country's knowing or reckless disregard of its nonpayment of fees required by C.R.S. § 10-4-639(1).

Country argues that plaintiff never tendered a claim to Country for payment of the fees required by C.R.S. 10-4-639(1). However, as noted earlier, plaintiff does allege submitting a claim for her total loss vehicle and shows Country responded to this claim by issuing a statement of automobile settlement that did not include statutorily required registration fees. ECF No. 26 at ¶11-12. Whether Country's settlement of the claim violated statutory obligations under C.R.S. § 10-4-639(1), and whether this conduct was reasonable assuming that a specific claim for registration and title fees was not tendered to Country, are questions of fact inappropriate for resolution at the motion to dismiss stage. Plaintiff alleges that as an established automobile insurer, Country is tasked with understanding laws and statutes applicable to its policies. A failure to make payments as required by the statute could plausibly be inferred to be a reckless or knowing disregard of the insured's entitlements with a total loss vehicle. However, for the same

reasons as described in Ms. Monson's first claim, the third claim is unavailable to the extend it seeks recovery of "ownership taxes" associated with a total loss vehicle

### D. Doe Defendants

Country also moves to dismiss plaintiff's ten Doe Defendants, arguing that plaintiff's Second Amended Complaint lacks any allegations concerning the conduct of the Doe Defendants. Plaintiffs do allege that "each of the defendants designated as a DOE is responsible in some manner for the acts and occurrences alleged herein." ECF No. 26 at 6. There is ample opportunity in discovery for plaintiffs to learn the identities of the Doe Defendants and amend the complaint. At this early stage in litigation, the Doe Defendants are not dismissed.

## IV.   CONCLUSION

I conclude that Colo. Rev. Stat. § 10-4-639(1) does not require an insurer to pay ownership taxes associated with the total loss of a vehicle. I grant the motion to dismiss plaintiff's first and third claim to the extent they seek recovery of ownership taxes, but deny the motions otherwise. For the second claim alleging a deceptive trade practice, I dismiss Ms. Monson's individual claim for damages without prejudice so she has an opportunity to amend or re-file should discovery allow her to allege fraud with the particularity required by Fed. R. Civ. P. 9(b). But I conclude that the Colorado Consumer Protection Act does not permit the recovery of actual damages in a class wide claim, nor does it provide for injunctive relief in a private action. As a result, I dismiss the second claim to the extent it seeks injunctive relief and actual damages for the plaintiff class. At this stage in litigation, Doe Defendants are not dismissed.

## ORDER

For the reasons above, the Motion to Dismiss [ECF No. 33] is GRANTED in part and DENIED in part.

DATED this 28th day of September, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge